# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA L. EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-220-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Brenda L. Edwards requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-five years old at the time of the administrative hearing (Tr. 66). She has a high school education, and has worked as a laundry worker and housekeeper (Tr. 74, 215). The claimant alleges she has been unable to work since July 22, 2013, due to anxiety, depression, chest pain, hearing difficulty, and migraine headaches (Tr. 175, 214).

**Procedural History**

On May 22, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 175-83). Her application was denied. ALJ Richard Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 24, 2016 (Tr. 43-54). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except she should avoid noisy environments and loud background noise, situations that require frequent verbal communication, and hazardous situations such as heights and machinery with only auditory alarms (Tr. 47). The ALJ found that the claimant could perform simple, routine tasks with routine

supervision, and could relate to co-workers and supervisors for work-related purposes, but could not relate to the public (Tr. 47). Additionally, the ALJ found that the claimant would be afflicted with symptomology from a variety of sources that would be of sufficient severity as to be noticeable to her at all times, but that she could nonetheless remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily (Tr. 47). The ALJ further found that the claimant required medication for relief of her symptomology, but her medications do not preclude her from functioning at the levels indicated, and she would remain reasonably alert to perform required functions presented by her work setting (Tr. 47). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a housekeeper, and alternatively, because there was other work she could perform in the national economy, *e. g.*, hand packer, electrical assembler, mail clerk, clerical mailer, and production assembler (Tr. 52-54).

**Review**

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinions of consultative examiners Dr. Bryan Smedley and Dr. Melinda Shaver, and (ii) properly assess her RFC. The Court agrees therefore the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of hearing loss not treated with cochlear implants, affective disorder, and anxiety disorder (Tr. 45). The relevant medical evidence reveals that the claimant was regularly treated for anxiety, chest pain, and headaches by providers at NeoHealth Health Center between April 2011 and October

2016 (Tr. 325-51, 455-539, 612-57). She also sought emergent care for chest pain and/or anxiety numerous times between June 2012 and June 2016 (Tr. 362, 365, 369-71, 396-404, 596-602). The claimant's chest x-rays were consistently normal, and she was treated with varying combinations of anti-inflammatory, psychotropic, and sedative medications (Tr. 362, 365, 369-71, 401, 596). Additionally, the claimant sought emergent care for headaches in July 2012, September 2014, and July 2016 (Tr. 360, 396, 590). A CT scan of the claimant's brain conducted on July 16, 2012, was normal (Tr. 361).

Dr. Bryan Smedley performed a consultative examination of the claimant's hearing on December 23, 2013 (Tr. 379-80). He conducted a sound booth hearing test without amplification, the results of which revealed a speech recognition threshold of 55 dB bilaterally, and word recognition of eighty percent at 40 SL bilaterally (Tr. 379). Dr. Smedley diagnosed the claimant with bilateral sensorineural hearing loss, moderate to severe; intermittent eustachian tube dysfunction; and speech delay (Tr. 380).

On August 13, 2014, Melinda Shaver, Psy.D. performed a consultative mental status examination of the claimant (Tr. 388-90). She observed that the claimant's mood was neutral and her affect was congruent, and that she had to repeat many of her questions because the claimant could not hear them the first time (Tr. 388). Dr. Shaver found that the claimant's speech was relevant, but not coherent, and noted that her hearing disorder appeared to have resulted in a speech impediment (Tr. 389). Dr. Shaver opined that the claimant appeared able to complete some tasks in a timely and appropriate manner (Tr. 389). She diagnosed the claimant with posttraumatic stress disorder, major depressive

disorder, severe, without psychotic symptoms, and panic disorder with agoraphobia (Tr. 390).

On July 18, 2014, state agency physician Dr. Leah Holly completed a physical RFC Assessment and found that the claimant could perform work at all exertional levels, but needed to avoid noisy environments, loud background noise, situations that require frequent verbal communication, and hazards such as heights and machinery with only auditory alarms (Tr. 87-89). Her findings were affirmed on review (Tr. 102-04).

On September 3, 2014, state agency psychologist "LJE, Ph.D. 38" completed a Mental RFC Assessment wherein she found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public (Tr. 90-91). Dr. LJE explained that the claimant could perform simple, routine tasks with routine supervision, and adapt to a work situation, but could not relate to the general public (Tr. 91). Dr. LJE's findings were adopted on review (Tr. 104-06).

At the administrative hearing, the claimant testified that she attempted to use a hearing aid, but was still unable to hear (Tr. 67). She indicated that her hearing loss caused problems for her at work because her supervisors thought she was either not listening or not paying attention, when in reality she could not hear them (Tr. 71). As to her anxiety, the claimant testified that she experiences anxiety every day, and never knows when she is going to experience an attack, but does experience chest pain and shortness of breath after five or ten minutes of cleaning (Tr. 69). She indicated that her medication does "not really" help relieve her symptoms (Tr. 73).

In his written opinion, the ALJ summarized the claimant's testimony and some of the medical records. In discussing the opinion evidence, he provided a summary of the consultative opinions of Dr. Shaver and Dr. Smedley, but failed to provide any analysis or assign any weight to their assessments, and adopted some, but not all of their findings without explanation (Tr. 49-50). He gave great weight to the state agency physicians' opinions because they were supported by the objective medical evidence that indicated the claimant sought little treatment for physical impairments and did not follow through on advice to try a hearing aid (Tr. 51). He also gave great weight to the state agency psychologists' opinions because they were supported by treatment notes that indicated the claimant was alert and oriented, and had appropriate judgment, good insight, and appropriate mood and affect (Tr. 51).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which

an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ summarized the opinions of Dr. Smedley and Dr. Shaver but provided no analysis at all in relation to the pertinent factors. He did not assign Dr. Smedley's opinion any weight but appeared to adopt his finding that the claimant has hearing loss. The ALJ nevertheless failed to acknowledge Dr. Smedley's finding that the claimant had a speech delay, nor did he discuss why no limitations related to such speech delay were included in the RFC. Similarly, the ALJ appeared to adopt Dr. Shaver's opinion that the claimant could complete some tasks in a timely and appropriate manner, but entirely ignored her diagnoses. In addition to evaluating Dr. Smedley's and Dr. Shaver's findings according to the appropriate standards, the ALJ should have explained why he found certain aspects of their opinions persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Additionally, the claimant alleges that the ALJ ignored her medically determinable impairments of headaches and cervicalgia. This Court and the Tenth Circuit have

repeatedly stated that, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. Aside from noting a single emergency room visit in September 2014, the ALJ failed to account for the claimant's headaches and cervicalgia entirely. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments, both severe and non-severe, in assessing his RFC. Both errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such

limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to properly evaluate the medical evidence and account for *all* the claimant's impairments at step four, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**